833 F.2d 1006
 24 Fed. R. Evid. Serv. 75
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Quinard REED, Defendant-Appellant.
 No. 86-5672.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 9, 1987.
Decided Nov. 17, 1987.
 
 Robert Stanley Powell for appellant.
 Constance Harriet Frogale, Assistant United States Attorney (Henry E. Hudson, United States Attorney, Claire E. Kenna, Third Year Law Student on brief) for appellee.
 Before WIDENER, SPROUSE, and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Quinard Reed appeals his conviction for the murder of a fellow inmate at the District of Columbia's Lorton Reformatory in northern Virginia. He contends that the district court erred in denying his pretrial motion for dismissal based on alleged excessive pre-indictment delay, in failing to grant his motion for continuance, and in excluding hearsay testimony. We affirm the conviction.
 
 
 2
 Reed was indicted on August 5, 1986 under 18 U.S.C. Sec. 1111 (1982 & Supp.1985) for the May 24, 1984 murder of inmate Keith Jordan. Immediately preceding the killing, Jordan had been playing Ping-Pong in the prison gymnasium with inmate Tyrone Bratton. After losing, Jordan refused to surrender his position at the table to the next inmate waiting to play, an individual known to Bratton only as "Slim." Slim and Jordan argued briefly before Slim left the gymnasium. Slim returned within ten minutes and stabbed Jordan in the back with a homemade knife. Jordan fell, Slim ordered him to stand, and after Jordan regained his feet Slim stabbed him several more times, fatally wounding him.
 
 
 3
 Three days after the murder, Bratton provided this account of the killing to FBI investigators and identified Reed as "Slim" from a display of photographs of Lorton inmates. The FBI completed a report on its investigation of the murder in October 1984, but after an Assistant United States Attorney read the report in February 1985, he directed the agency to investigate further.
 
 
 4
 In March 1985 and following months, another Lorton inmate, Ronald Smith, gave conflicting identifications of Jordan's killer to the FBI. Smith at one point identified someone other than Reed as Jordan's killer, but later he stated that Reed and this other person had killed Jordan together. In the summer of 1986, Smith testified before a grand jury that Reed had committed the murder. On September 9, 1986, the government informed Reed's counsel of Smith's possibly exculpatory statements for Reed concerning the involvement of someone other than Reed in the murder. The government also said it might or might not call Smith as a witness. Shortly after that, Smith disappeared.
 
 
 5
 Reed moved for a continuance of his trial date because of Smith's unavailability to testify. He also moved in the alternative for dismissal, claiming that Smith's disappearance was the prejudicial consequence of undue delay by the government in seeking an indictment. The district court denied both of Reed's motions, and his trial took place in October 1986.
 
 
 6
 At trial, Bratton, the Ping-Pong player, identified Reed as the killer. Reed relied on an alibi defense. He testified that at the time of the murder he was playing basketball with inmates Bernard Butler, Ronald Crews, Milton Green, and Tyrone Lewis. Green and Lewis confirmed Reed's account, but a correctional officer testified that Lewis was incarcerated that day in a part of Lorton that would have made it impossible for him to have played basketball with Reed.
 
 
 7
 Butler and Crews denied Reed's alibi story. Crews testified that on the afternoon of the murder Reed entered the prison dormitory with blood on his hands carrying a homemade knife. He further testified that afterwards Reed approached him and Butler, and asked them to provide him an alibi. Reed was convicted of first-degree murder.
 
 
 8
 In his first contention on appeal, Reed maintains that he suffered prejudice amounting to a denial of due process from the government's delay in seeking an indictment. We disagree. In United States v. Automated Medical Laboratories, this court interpreted the Supreme Court's decisions in United States v. Marion, 404 U.S. 307 (1971) and United States v. Lovasco, 431 U.S. 783 (1977) as establishing a two-pronged inquiry for assessing the constitutionality of pre-indictment delay:
 
 
 9
 First, a court must assess whether the defendant has suffered actual prejudice, and the burden of proving such prejudice is clearly on the defendant. If the threshold requirement of actual prejudice is met, the court must then consider the Government's reasons for the delay, balancing the prejudice to the defendant with the Government's justification for delay. [citation omitted] The basic inquiry then becomes whether the Government's action in prosecuting after substantial delay violates "fundamental conceptions of justice" or "the community's sense of fair play and decency."
 
 
 10
 770 F.2d 399, 403-04 (4th Cir.1985), quoting Lovasco, 431 U.S. at 790. Reed fails both prongs of the Automated Medical Laboratories test.
 
 
 11
 Disregarding for the moment the prejudice threshold, the FBI's continuing investigation until shortly prior to the grand jury presentment negates any allegedly unwarranted delay by the United States Attorney's Office in seeking an indictment. Despite defendants' assertions to the contrary, we find no indication in the extended investigation of "reckless disregard" for Reed's ability to mount a defense. See Lovasco, 431 U.S. at 795, n. 17. Nor did the prosecutorial delay violate "fundamental conceptions of justice" or "the community's sense of fair play and decency." Id. at 790. Reed also has failed to demonstrate actual prejudice from the delay as required by Marion and Lovasco. Smith's waffling on the identification of the murderer and his reiteration of Reed's culpability before the grand jury made his value as a defense witness doubtful.
 
 
 12
 Likewise, we find no error in the trial court's denial of Reed's motion for a continuance to locate Smith. The decision to grant or deny a continuance resides within the trial court's discretion, and we reverse such decisions only for an abuse of discretion. Morris v. Slappy, 461 U.S. 1, 11-12 (1983); United States v. Brown, 821 F.2d 986, 988 (4th Cir.1987). No indication exists that the trial court's denial was arbitrary since Smith was a fugitive and Reed's chance of locating him was highly speculative. Nor did the denial of a continuance result in serious prejudice to Reed's defense--he was still able to present an alibi with the support of two witnesses.
 
 
 13
 Finally, the trial court did not err in disallowing the cross-examination by Reed's counsel of the FBI agent concerning Smith's statements to the agent that were possibly exculpatory for Reed. The statements were offered for the truth of the matter asserted, and the district court correctly excluded this inadmissible hearsay. Fed.R.Evid. 802. Reed argues the evidence was admissible under the residual exception, Rule 803(24) of the Federal Rules of Evidence. Yet admission of evidence under the residual exception requires that the statements of the declarant have "circumstantial guarantees of trustworthiness." Fed.R.Evid. 803(24); United States v. Hinkson, 632 F.2d 382, 385 (4th Cir.1980). Smith had provided several versions of the killing and the only version with any indicia of reliability was that provided under oath to the grand jury. That version is not helpful to Reed, as Smith unequivocally identified Reed as Jordan's killer before the grand jury.
 
 
 14
 In view of the above, the judgment of the district court is affirmed.
 
 
 15
 AFFIRMED.